Michael R. O'Neal, Counsel Girard Public Library 20 West 2nd Avenue, 2nd Floor P.O. Box 2977 Hutchinson, Kansas 67504
Dear Mr. O'Neal:
In Attorney General Opinion No. 2006-13 we considered K.S.A.12-16,102, which authorizes a taxing subdivision to create an employee benefits contribution fund for a political subdivision on behalf of which the taxing subdivision levies taxes. K.S.A.12-16,102 authorizes the taxing subdivision to levy an annual tax in an amount determined "to be necessary for the purposes for which [the] funds were created."[1] The issue addressed in the opinion was whether it was the taxing subdivision (i.e. the city) or the political subdivision (i.e. the city library) that established the amount of the annual tax. We concluded that it is the taxing subdivision that determines the amount of the annual tax.
Our opinion did not address whether K.S.A. 12-16,102 requires a taxing subdivision to fully fund the political subdivision's share of employee benefits. It is this issue that we now consider in the context of the dispute between the City of Girard and the Girard Public Library.
In 1991, the Girard Public Library Board of Directors adopted a resolution whereby the Board agreed to "pay the same type of benefits as the other City of Girard's employees, as to equal amounts as long as the amount is met by the levy [which] levy is separate from and in addition to the general levy and fund for library operations." The levy referred to in the library resolution was K.S.A. 12-16,102 which provides, in part:
 "(a) Except as provided in this section, "taxing subdivision" means any city, county, township or other political subdivision of the state of Kansas having authority to levy taxes on taxable tangible property. . . ."
 "(b) Any taxing subdivision may create and establish employee benefits contribution funds for (1) the taxing subdivision or (2) any political subdivision for which a tax is levied by such taxing subdivision for the purpose of paying the employer's share of any employee benefits, exclusive of any salaries, wages or other direct payments to such employees, as may be prescribed in the ordinance or resolution of the governing body creating such funds. The taxing subdivision may receive and place in such funds any moneys from any source whatsoever which may be lawfully utilized for the purposes stated in the ordinance or resolution creating such funds, including the proceeds of tax levies authorized by law for such purposes.
 "(c) The governing body of any taxing subdivision
having established employee benefits funds under subsection (b) is hereby authorized to levy an annual tax upon all taxable tangible property within the taxing subdivision in an amount determined by the governing body to be necessary for the purposes for which such funds were created and to pay a portion of the principal and interest on bonds issued under the authority of K.S.A. 12-1774, and amendments thereto, by cities located in the county."[2]
Soon after the Library's resolution, the City enacted Ordinance No. 1038 which provides, in part:
 "Section 1. The City of Girard, Kansas, in accordance with K.S.A. 12-16,102, does hereby create and establish an Employee Benefits Contribution Fund for the purpose of paying the City's share of employee benefits as prescribed in Section 3 of this Ordinance."
 "Section 2. The City of Girard, Kansas, in accordance with K.S.A. 12-16,102, does also hereby create and establish a Library Employee Benefits Contribution Fund for the purpose of paying the Girard Public Library Board's share of employee benefits as prescribed in Section 3 of this Ordinance."
 "Section 3. The employer's share of the cost of employee benefits authorized for payment from the Funds created and established by Section 1 and 2 of this ordinance shall include the following:
 "(a) Social Security (FICA);
 "(b) Kansas Public Employees Retirement System (KPERS);
 "(c) Worker's Compensation benefits;
 "(d) Employment security, unemployment compensation benefits;
 "(e) Medical health and hospitalization insurance and other health care costs."[3]
It appears that the City is unhappy with the increasing number of Library employees who are eligible for the benefits identified in Section 3 of the ordinance. You indicate that in the City's 2005 budget, the City neither budgeted sufficient funds nor levied a sufficient tax to cover the cost of the Library's share. This same scenario is expected for the 2006 budget year.
The history of K.S.A. 12-16,102 is recounted in our previous opinion[4] and will not be repeated in its entirety. First enacted in 1978, its purpose was to obviate the need for cities, counties, and other taxing subdivisions to levy separate taxes for a variety of employment benefits.[5] Once created, the fund was to pay "the employer's share of any employee benefits . . . as may be prescribed in the ordinance . . . creating such fund."[6] In addition to the tax levy, the taxing subdivision could use funds from other sources.[7]
In 1983, the Legislature augmented a taxing subdivision's ability to create and fund an employee benefits contribution fund by authorizing an identical fund for certain political subdivisions.[8]
Given the purpose and the plain language of K.S.A. 12-16,102, it is our opinion that a taxing subdivision that has created an employee benefits contribution fund for the benefit of a political subdivision pursuant to K.S.A. 12-16,102 must fully fund the political subdivision's/employer's share of the employee benefit identified in the ordinance or resolution creating the fund. Such funding may come from any source that can be lawfully utilized, including the tax levy authorized in the statute.
While the fund is discretionary, once established, its funding must be at a sufficient level to satisfy the political subdivision's share of the employee benefits identified in the ordinance or resolution creating the employee benefits contribution fund.[9]
You also inquire what legal remedies may be available to require the City to pay the Library's share of employee benefits for 2005 and, possibly, 2006. Whether a particular legal remedy is appropriate will depend upon the facts and circumstances of each situation and therefore is not a topic suitable for resolution in an Attorney General opinion.
Sincerely,
 Phill Kline Attorney General
 Mary Feighny Assistant Attorney General
PK:JLM:MF:jm
[1] K.S.A. 12-16,102(c).
[2] Emphasis added.
[3] Emphasis added.
[4] Attorney General Opinion No. 2006-13.
[5] Id. Attorney General Opinion No. 86-140.
[6] L. 1978, Ch. 67, § 1(b).
[7] Id.
[8] L. 1983, Ch. 65, § 1.
[9] See Attorney General Opinion No. 89-50 (once employee benefits contribution fund is established, taxing subdivision may not decline to levy for fund amounts necessary).